Appeal of the Employee Retirement Income Security Act Among the Secretary's responsibilities is the enforcement of the Employee Retirement Income Security Act, which I will be referring to as ERISA throughout my argument. This appeal addresses the question of whether a second amended distribution plan submitted in the lower court violates ERISA and receivership law. Capital Consultants was an Oregon investment management company that managed the assets of over 60 ERISA plan clients as well as other clients. We've read all the briefs, which I frankly found to be very repetitive, and we know all that. I guess the issue that I'd like you to talk to me about is why should the receiver be held to the same fiduciary obligations as a normal plan trustee when he is faced with a situation of trying to wrap up a very difficult receivership with competing claims where it is quite clear that he's not going to be able to satisfy the claims 100 cents on the dollar? The reason he should be held to the same standards is because there's no reason not to hold him to the same standards. The receiver has not shown any reason why he cannot fulfill his receivership duties and comply with his ERISA duties. ERISA doesn't allow any exceptions for a receiver, and there's been no evidence that there needs to be. But this isn't a normal administration of a plan where everything is going along according to routine and we want the plan fiduciary to be careful how he or she oversees the investment of the plan assets. This is a mop-up situation where the court has appointed, I guess at your request, a receiver to come in and do the best he can to clean it up. Shouldn't that make a difference? We've got one, I guess, New York State case where the New York court found that this is different from the normal fiduciary obligation. Can you give me a federal case that says it shouldn't be different? Or is this it? Well, that case is it and that case does not affect the situation before the court today. The Levy v. Lewis case that Your Honor refers to is a situation where, first of all, the court found that the superintendent of insurance in the state of New York was not operating as a fiduciary under ERISA. More importantly, the court found that the process that the insurance commissioner had to implement, which was simply taking the liquidation statutes of New York and liquidating the assets of an insolvent insurance company, was not an agree that those are ministerial duties if all you're doing is implementing a scheme that you don't have to decide. You had your insolvent assets. The assets of the insolvent insurance company included some pension obligations. And in that case, there was also some issues as to whether or not an ERISA plan was even involved. None of those facts are present here. But we clearly have an insolvency situation. Yes, we do. All right. I'm sorry. Go ahead. I thought you wanted me to stop you. No, no. Go right ahead. You sought the receivership. Yes, we did. Any time you have got a receivership where the receiver has to marshal assets and then work out some sort of equitable distribution to different claimants, to some extent you've got a conflict of interest against each of the claimants. Then under your theory, there could never, never be a receivership where one or more of the creditors is an ERISA plan? No, Your Honor. That's not our position there. Of course, there can be a receivership. But the receiver has to wear two hats if the receiver is also an ERISA fiduciary. Well, the receiver might run the show for a few days, but when it comes to distribution of assets, he has to step aside. The receiver could not participate in deciding these sorts of issues between different creditors under your theory. Well, no. What the Secretary's contention is, Your Honor, is that the receiver is pulling has no jurisdiction over. And the assets that he's pulling into the receivership from the Secretary's arena of concern are the assets of ERISA plans that the, as a fiduciary to those plans, the receiver may not devalue. The assets we're talking You're now talking only about the third party, third party recoveries. Of course, yes, exactly. That's all you're talking about. That's all, that is the only part of the receivership distribution plan that the Secretary has ever taken. The only thing, your only issue is the third party recoveries that are now being set off at a 50 percent rate, you say should not be set off at all. That's correct, Your Honor. Would you prevail even if there were no ERISA here at all? That is to say, if all the third party recoveries were coming in under the collateral source rule, coming in from insurance companies, that is, coming in from other investment advisors, do you even need ERISA to prevail? Not necessarily if the collateral source rule applies. However, when it is an asset of an ERISA plan, ERISA always prevails. The third party claims do not need to be ERISA claims. That's my point. No, they don't need to be ERISA claims because the claims are ERISA assets. And so it is the money that would come into the plans from those claims that is the asset the receiver is taking jurisdiction over by devaluing. Help me out a little bit. What precisely are the third party claims that have been brought into the ERISA plan that you say shouldn't be offset? What's the nature of those claims? They vary. Give me a couple of examples. I'm going to say there are four categories. Just kind of give me an idea. The first one would be a claim against, a claim for a fiduciary breach by the trustees for failure to monitor the business of CCL and fail to monitor their investment managers. The second would be claims against other service providers, accountants, lawyers. The third would be claims against other fiduciaries, whether they hired consultants or whatnot. And the fourth is the Department of Labor has claims that it is bringing against these trustees. Is there a fifth category? Are there bonding or insurance claims as well brought by the ERISA plans? There would be bonding for all fiduciaries. So some of the third party recoveries would then be on insurance or on bonds? Most of the third party recoveries would be on insurance and on bonds because in the typical ERISA situation you do not have very wealthy trustees. These would be the working people. And the individual ERISA plan would previously have paid for those bonds or for that insurance? Exactly. They would have bought that asset for themselves which would put them in a different situation than even the other non-ERISA claims who didn't have clients of CCL who did not insure. Yeah. And that's where this special asset, first of all that's where ERISA comes in to create this arena of additional protections. It certainly speaks to the prudence of the trustees who are going out and seeking these additional recoveries. You also have trustees who are seeking additional recoveries based on their own conduct. And to the degree that these third party claims would not be against bonding companies or insurance companies but rather against trustees or other advisors, I assume those trustees or other advisors were also paid out of the ERISA plan assets. That is to say those services were paid for and the responsibility is owed to the ERISA plan by virtue of those payments. That's exactly right, Your Honor. Okay. What's the status of the private fund? Has there been a distribution? And what's the status of third party claims? Are there still more to be made? There have been interim distributions. There is a stay in effect to assure that any result of this appeal will not affect total distribution. There has been some recovery of third party claims and therein is another problem because those settlements were entered into before any knowledge of this and those settlements were approved by the department as well as entered into on behalf of certain individual ERISA client plans to the tune of about $15 or $16 million before anybody knew about the third party recovery provisions. So those settlements were entered into before we knew the actual value of those settlements because we didn't see this coming. Okay. I think we have your argument in hand. You've got about a minute left. Why don't we save it? We'll have it on the other side and then you'll get a chance. Thank you. Okay. Good morning. May it please the Court, Jeffrey Patterson for the receiver, Thomas Lennon. And if you can keep your voice up, I'd appreciate it. Okay. As the panel is aware, several of these appeals raise the exact same issue so I will try not to be duplicative and I'll try to respond now just to the points raised by the Department of Labor. First of all, it is a mischaracterization to say that by including an offset provision in the plan of distribution, the receiver is somehow taking away a plan asset. The way this Are they taking away something that was paid for by the plans? No, Your Honor. They didn't pay for the insurance of the bonds? Well, look at this situation. I'm asking a different question. Did they pay for the insurance of the bonds? If insurance exists and they paid a premium for it, then yes, I would agree. Unfortunately, I don't think there's anything in the record that actually Well, I don't know a lot of insurance companies that provide the insurance for free. Well, I would agree with that. Okay. When you find one, write, please. No, nor do I think there's anything in Except the General Fund of the United States, which seems to operate as a de facto insurer. They're not directly taking money from the plan, but the receiver is setting a participation that affects the money of the plan. I don't know if there's any real difference. It's a timing difference, Your Honor. If all of these third-party recoveries had been achieved before the receiver proposed his plan and the court had approved it, those plans that were able to go out and sue their lawyers and sue their plan monitors and advisors and obtain recoveries for the losses incurred on their CCL investments, it cannot be disputed that their losses have been reduced. And so then the only question is, should they have the same claim amount to be asserted against a fixed sum of money in the receivership estate? This is not a situation where if one plan went out, sued their lawyer, got a $5 million recovery, that the receiver would have to pay out $5 million less to the victims of CCL. The receiver will distribute the same amount of money regardless of the third-party recoveries. It's just a question of how is that fund allocated amongst the victims, which is what equity funding and in-ray concrete Smith spoke to. I'm not sure I followed you. Give me your example again about you received $5 million from the wrongdoer. Run through that one more time. Sure. Let's say that plan client A lost $1 million in its CCL investments. It sues its lawyer for malpractice in failing to properly oversee the investment activities. And there is evidence in the record that certain plans did have lawyers who oversaw CCL's activities. And in fact, there have been such settlements. That plan recovers $5 million from that lawyer, probably that lawyer's insurance company. And in that event, the plan didn't pay the premium, but the lawyer undoubtedly did. Well, you pay the lawyer and then... Sure. At that point, that plan's losses on account of its CCL investments have been reduced to $95 million. I'm sorry, $100 million, $5 million recovery down to $95 million. And our offset provision in the plan says where you've gone out, you've mitigated your losses, you've reduced your claim amounts, we're going to reduce it, not by 100%, and this is where we've tried to mitigate the timing problem we have here. It's 50% of that net. So if you spent money chasing it, you're not going to get dinged for that either. No, you're just describing the way the operation of the plan. I thought you were telling me more than that. No, you're just describing how it works. But my point is that if all those recoveries had happened before the plan was adopted, and before any distributions were made, then no one could dispute that their losses, that they were seeking a recovery from CCL, had been reduced. Well, I don't see the difference between what the receiver's going to be doing as to when the third-party recovery's made. No, you are correct, Your Honor. I was saying, theoretically, if they had been made before, there could be no argument that the losses had been mitigated. It's only because some are happening before, and some are happening after, that the plans are now able to argue that you're, in effect, taking away some of our subsequent recovery, because it's going to reduce the amount of our claim. Had we recovered it before, our claim would have already been reduced, is my point. They couldn't double recover, or they shouldn't be able to double recover. As I understand the government's argument, they're saying that if, and I'm not sure this would happen in any of these, but if there were double recovery, that is to say if you add the amount that the receiver would pay out in any event, to the amount recovered from third parties, and that results in overcompensation for the loss, I gather the government is willing to say the receiver is at perfect liberty to cut that off, so that there's no excess recovery. That's how I read the brief. I'm not sure I read it that way, particularly when it would apply to a bond or an insurance recovery. But the plan contains a cap, doesn't it, in recognition of Judge Fletcher? The plan does contain a cap, which says that if, through a combination of plan distributions and third party recoveries, a particular client receives 100% of its capital, no interest, no profit, that client is cut off from distributions until everybody else catches up and gets 100%. Maybe I misread the brief or mischaracterized. What I understand is I don't understand the government to be objecting to that aspect of the plan. That's fine, Your Honor. Mr. Patterson, could you address the government's opening issue with regard to the fiduciary duties of a receiver under ERISA? Certainly. We don't dispute that the receiver does have a fiduciary duty to all CCL clients, including the ERISA clients. And we don't dispute that he has a duty of loyalty. But as Your Honor pointed out, when you have competing claimants for the same limited fund of monies, each client wants as much of that fund as it can get for itself. There is a competing duty of loyalties. And as the Levy case pointed out, in that instance, the receiver cannot be held to the same strict duty of loyalty that that plan's individual trustee would have. We're not running the plans. We're running, when I say we, the receiver is running the receivership, which contains plan investments. He has to figure out a way to equitably distribute the plan assets in a way that satisfies his duty to all claimants, and not just any particular one. Well, as I understand the government's argument, the fiduciary duty would have to be, in essence, to give a priority to the ERISA plans. That, to the extent that there were competing claims as between ERISA versus non-ERISA claimants, that he would, if he truly is an ERISA fiduciary, then he must act to better the interests of the ERISA claimants at the expense of the non-ERISA. And I do not believe that is the law. I believe in a federal court equity receivership where there are ERISA and non-ERISA clients, a receiver is not required by law to elevate the ERISA claimants to, in essence, a higher class of creditor. Well, the other question, and I'm going to pose this to Ms. Elias when she gets back up, what do you do as here where you have more than one ERISA plan that is a claim? Because clearly some of the receiver's choices are going to have to benefit one over the other. Right, and in this instance, the receiver proposed what he thought was most equitable in order to satisfy his duty to all, and the judge was within his discretion in approving that plan. Thank you. Thank you very much, and I have a feeling you'll have a chance to address some of these questions later. Thank you. The first question I'd like to take is Judge Tallman's question because your second question assumes, includes an incorrect assumption, and the assumption is we are not asking that the ERISA plans get priority. We are not asking that ERISA fiduciary duties trump receivership duties. What we are saying that in his dual role as an ERISA fiduciary and a receivership fiduciary, he cannot treat ERISA plans less favorably. You're asking more than that. You said you want the receiver to recover ERISA assets for the ERISA plans, which includes third-party recoveries under insurance policies that they pay premiums on, and that that can't be counted against them for purposes of the offset distribution. No, the receiver is not going after the third-party assets. The plans themselves and the secretary are going after the third-party assets. Well, let me rephrase my question. As I understand what you're asking, you are asking us to find that the receiver cannot direct an offset based upon an ERISA plan's recovery from a third party, let's say under a malpractice or an E&O policy that they paid the premiums on. That's correct, Your Honor. And that is supported not only by ERISA, but it's supported by receivership law under the idea that equal claimants need to be treated equally, but the corollary is true, that unequal claimants do not have to be treated equally. All right, then let me give you my harder hypothetical. What happens when the recovery under one ERISA plan's third-party source, let's say it's an E&O policy, goes to the plumber's union, the plumber's pension plan, but one of the other ERISA plans, through the omission of the trustees, didn't buy that kind of insurance, and therefore there will be less assets available to distribute. So the one plan is going to benefit at the expense of the other. Absolutely. What does the receiver do in that case? Nothing that is completely consistent under ERISA. So you don't think that would be a breach of his fiduciary duties to the second ERISA plan? Absolutely not, because that asset belongs to that plan that owns that asset, not to the plan over here. Except that if the receiver does it the way the receiver wants to do it, that second plan is actually going to receive a little more in recovery than if... But it will receive that amount from an asset it did not earn and at the expense of a plan whose asset it was. This is very similar, Your Honor, to a company that has both a health plan and a pension plan. One is hurting, one isn't. You can't mingle those funds to help one plan over the other. Well, the problem, I think, and maybe we just disagree on this, but the problem is that I still see a discrimination as between the two and a competing claim on fiduciary obligations of the receiver that he can't practically honor if the government's theory is carried to its logical conclusion. I don't see any way you can do that where there aren't sufficient assets to meet all of the claims. Well, the first thing, the government's approach on that, and if we disagree, all I can do is state my argument, and that is simply that by counting the recovery, you are devaluing the asset that those plans have that no other client of CCL has. And that is a violation of ERISA section 404. The recovery provision, the offset provision was an option that the receiver could or could not have chosen to implement and has so admitted. ERISA is not an option. ERISA is mandatory. And it doesn't disfavor those who don't get to take in the pot of third-party recoveries. They are exactly where they would have been had none of these claims existed. It does favor those parties who are protected by a very important federal statute and those diligent parties who use that federal statute to create these additional assets for them to recover. I see my time is up if there are no more questions. This isn't so much a question, but it's coming back to something I've said before. I don't see really analytically that the ERISA plans are in a different position vis-à-vis the receiver and the distribution than any other claimant who has had the foresight, for example, to purchase insurance and is paid, gets that insurance, and says, well, that's what I paid for, and why should I give what I paid for to somebody else who didn't have the foresight and didn't want to pay for it? I'm not sure that this case turns on ERISA. No, but the Secretary's position and authority only covers ERISA. By the way, to answer your previous question, no, we do not seek over a 1% windfall year. You do not challenge that aspect. Okay, that deal is now submitted. We're going to take a 5 to 10-minute break, and then we will resume with the next one. All rise. We're going to reset for 5 minutes. Thank you.
judges: Reavley , W. Fletcher, Tallman